UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
                            :

ANTHONY LEON CLEMMONS,        :
                            :

               Plaintiff,   :

                            :

           v.              :      15 Civ. 8975 (KPF)

                            :

ANDREW HODES, DAVID PLUMB,    :      OPINION AND ORDER
GERALD LORRAINE, FREDERICK N. :
CHIDESTER, NANCY F. EISCHEN, JAMES :
WALKER, METRO-NORTH RAILROAD, and :
TRANSPORT WORKERS UNION OF   :
AMERICA,                      :
                            :

             Defendants. :
                            :
---------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 26, 2017

KATHERINE POLK FAILLA, District Judge:[1]

      For nearly three years, Plaintiff Anthony Leon Clemmons was a member
of the Transport Workers Union of America ("TWUA"), who worked as a train
car cleaner for Metro-North Railroad ("Metro-North").  Though the cause of his
injury is disputed, Plaintiff was injured, somehow, in December 2010.  Initially,
Plaintiff told Metro-North that he was injured while cleaning a train car; he
later recanted that story and, following a disciplinary hearing in 2012, was
terminated for falsifying an injury report.  Plaintiff's administrative appeal of
that termination was denied in 2014, prompting Plaintiff to file this suit against
Metro-North, the TWUA, and several railroad and union employees.  Among a
multitude of claims, Plaintiff alleges a violation of the Equal Protection Clause
of the Fourteenth Amendment; cruel and unusual punishment in violation of

---

[1]    The Clerk of Court is directed to modify the caption as provided above.

the Eighth Amendment; violations of his procedural due process rights; civil and criminal conspiracy; and breach of the duty of fair representation.

Before the Court are two motions to dismiss — one filed by Metro-North, Andrew Hodes, James Walker, and David Plumb (collectively, the "Metro-North Defendants"), and a second filed by the TWUA and Gerald Lorraine (collectively, the "Union Defendants"). For the reasons stated below, both motions to dismiss are granted.[2]

---

[2] This Opinion draws on facts from two sources: the Second Amended Complaint ("SAC" (Dkt. #45)), and the many exhibits appended thereto. *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F. 3d 554, 559 (2d Cir. 2016) (finding that district courts may consider "documents appended to the complaint" when evaluating a pleading on a motion to dismiss). The exhibits include excerpts from the transcript of Plaintiff's November 30, 2012 disciplinary hearing before Defendant Metro-North Hearing Officer James Walker. (SAC, Ex. 17-21). Both the Union Defendants and the Metro North Defendants include a complete copy of the hearing transcript ("Hearing Tr.") with their moving papers. (*See* Dkt. #51, Ex. A; Dkt. #59, Ex. G). Because Plaintiff relied heavily on the hearing transcript in drafting his SAC (*see, e.g.*, SAC ¶¶ 52-57), the Court is not required to confine itself to only those pages Plaintiff chose to append as exhibits. *Rothman* v. *Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." (citing *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); *cf. Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (finding that a transcript of a disciplinary hearing could not be considered where it was neither cited in the complaint nor integral to the claims raised).

For ease of reference, the Court refers to the Union Defendants' memorandum in support of their motion to dismiss as "Union Br." (Dkt. #51), to the Metro-North Defendants' memorandum in support of their motion to dismiss as "Metro-North Br." (Dkt. #60) and the supporting declaration as "Meinen Decl." (Dkt. #59), to Plaintiff's joint opposition as "Pl. Opp." (Dkt. #70), to the Union Defendants' reply memorandum as "Union Reply" (Dkt. #71), to the Metro-North Defendants' reply memorandum as "Metro-North Reply" (Dkt. #72), and to Plaintiff's belated second opposition to the Union Defendants' motion as "Pl. Union Opp." (Dkt. #78).

**BACKGROUND**

**A.      Factual Background**

**1.      Plaintiff's Injury**

The following factual recitation draws principally from the SAC, and as such reflects Plaintiff's view of the events. Plaintiff began working as a coach cleaner for Metro-North in March 2007. (SAC ¶ 11). On December 23, 2010, at 11:00 a.m., Plaintiff injured his hand while cleaning the sink in a train car. (*Id.* at ¶ 13). Because he was "bleeding very badly," Plaintiff looked for a supervisor at the train yard (*id.* at ¶¶ 14-15); when he could not find one, he told a co-worker that he was injured and was taking a lunch break to seek medical attention (*id.* at ¶ 16). Plaintiff asked this co-worker to tell the Yard Foreman why he left work. (*Id.* at ¶ 17). Plaintiff visited a doctor, who sent him to a hospital to receive stitches, and then returned to the train yard around 2:00 p.m. to continue his shift. (*Id.* at ¶¶ 18-21). Around 4:00 p.m., Plaintiff informed the General Foreman that he had been injured at work and had left to seek treatment. (*Id.* at ¶ 23). Based on Plaintiff's statements, the General Foreman issued an accident report. (*Id.*).

A few days later, on the morning of December 28, 2010, Plaintiff spoke to Defendant David Plumb, Superintendent of Car Appearance, about his injury. (SAC ¶ 28). By Plaintiff's telling, he informed Plumb that he was injured while working, and Plumb, contrary to Metro-North policy, sent him back to work without being cleared by the Occupational Health Services Department. (*Id.*). Later that day, Plaintiff was called back into Plumb's office. (*Id.* at ¶ 30). When

he arrived, he met his union representative, Defendant Gerald Lorraine, in the hallway; Lorraine told Plaintiff not to tell Plumb that he had been injured at work "because they are finding ways to terminate people with less time on the job," and instead advised Plaintiff that he should "make up anything, say a dog bite" to "keep [his] job." (*Id.* at ¶¶ 30-32). Plaintiff then "did as he was instructed" and Plumb told him he was "forgiven." (*Id.* at ¶ 32).

### 2. Plaintiff's Disciplinary Hearing

Plumb's absolution proved fleeting. The Collective Bargaining Agreement ("CBA") between Metro-North and the TWUA provides that a union employee "shall not be suspended nor dismissed from service without a fair and impartial trial[.]" (SAC, Ex. 28). Under the CBA, an employee is entitled to "prompt advance notice"; he or she "may be accompanied by a union representative" at the trial; and he or she is "permitted to question witnesses." (*Id.*). A union employee is also entitled to appeal the decision within Metro-North and, thereafter, to an Impartial Arbitrator. (*Id.* at Ex. 29). The employee may "submit proof" to the Impartial Arbitrator, whose decision is "final and binding." (*Id.*).

On January 4, 2011, Metro-North mailed Plaintiff a Notice of Action stating that a hearing would be held on January 12, 2011, on charges that Plaintiff had been absent from his assigned work location, falsified an injury report, and committed conduct unbecoming of a Metro-North employee. (SAC ¶ 39). On January 10, 2011, however, Plaintiff injured his back in a car accident, and his hearing was adjourned a dozen times throughout 2011 and

2012 due to Plaintiff's ongoing medical treatment. (*Id.* at ¶¶ 40-46). On November 29, 2012, Defendant Lorraine informed Plaintiff that Metro-North would hold "the trial tomorrow[] whether Plaintiff was present or not." (*Id.* at ¶ 49). And, indeed, on November 30, 2012, Metro-North held a disciplinary hearing presided over by a Hearing Officer, Defendant James Walker. (*Id.* at ¶¶ 52-53). Plaintiff was then "under strong medication constantly," and felt he could not participate, but he appeared for the trial nonetheless. (*Id.* at ¶¶ 50-51). Defendant Lorraine represented Plaintiff at the hearing. (*Id.* at ¶ 53).

At the hearing, Defendant Plumb testified that Plaintiff recanted his injury report and submitted a written statement to his foreman that read, in relevant part: "The truth is, I did not get hurt on the job. I was not thinking right. I was in another state of mind thinking about other things going on in my life. I deeply apologize for any trouble or paperwork that was done." (Hearing Tr. 16:20-24). Plaintiff did not call any witnesses, though he had the opportunity to do so. (*Id.* at 19:12-19). Plaintiff testified at the hearing that his December 2010 injury occurred "[o]ff the job" "through a dog bite"; that he falsified an injury report "on impulse" due to the pressures of his personal life at the time; and that he "just messed up." (*Id.* at 21:22, 22:16-23:11). Defendant Lorraine then made a brief closing statement in which he pleaded for leniency toward Plaintiff. (*Id.* at 24:4-16).

Plaintiff complains of two deficiencies in the hearing procedures: *First*, he challenges Defendant Walker's admission of an out-of-court statement made by a Metro-North employee. Specifically, during his direct examination by

Walker, Defendant Plumb was permitted to testify about a statement made to him by another Metro-North employee, Cornell Williams, in the course of Plumb's investigation. (SAC ¶ 52; Hearing Tr. 15:7-14). Plumb testified that Williams told him that Plaintiff informed "everybody in the locker room" that he "got bit by a dog." (SAC ¶ 52; Hearing Tr. 15:7-14). Defendant Lorraine objected to the admission of this testimony without requiring Williams to appear as a witness and submit to cross-examination. Walker denied Lorraine's request to cross-examine Williams, reasoning that the statement was admissible as part of Plumb's investigation file. (SAC ¶ 53; Hearing Tr. 15:15-16:16). *Second*, Plaintiff challenges the fact that he was compelled to participate in the hearing on that day. He claims to have suffered from "pain, dizziness, light-headedness[,] and symptoms of unsteadiness" throughout the hearing, but neither Lorraine nor Walker asked Plaintiff questions to assess his ability to proceed with the trial. (*Id.* at ¶¶ 54-55). On these facts, Plaintiff alleges that he was "deprived of a fair [d]isciplinary [h]earing." (*Id.* at ¶ 73).

Plaintiff further alleges that, at the end of the hearing, Defendants Walker, Lorraine, and Plumb, along with Defendants Andrew Hodes (Assistant Director of Labor Relations at Metro-North) and Nancy Eischen (Arbitrator) left the hearing room and had a conversation in the hallway. (SAC ¶ 57).[3] Plaintiff claims that this conversation furthered a conspiracy between and among

---

[3] The SAC alleges that Defendant Eischen was present, but the hearing transcript does not reflect her attendance at the Metro-North disciplinary hearing, (*see generally* Hearing Tr.), and the Court has no reason to believe that an arbitrator would be present at an antecedent internal disciplinary hearing.

Defendants Eischen, Lorraine, Hodes, and Plumb to "unjustly and unconstitutionally terminat[e] Plaintiff's employment," because "[i]t was apparent that the Defendants had a [d]iscussion concerning the Plaintiff[] without the Plaintiff being present."  (*Id.* at ¶¶ 75-77).[4]

### 3.     Plaintiff's Termination and Appeal

One week after the hearing, on December 5, 2012, Metro-North issued a Notice of Discipline ordering Plaintiff's immediate dismissal for (i) absence from his assigned work location, (ii) falsification of an injury, and (iii) conduct unbecoming of a Metro-North employee.  (SAC, Ex. 15).  On December 11, 2012, the TWUA filed an appeal of Plaintiff's termination.  (SAC ¶ 60).  On February 7, 2013, Plaintiff received a letter from Defendant Hodes informing him that his appeal had been denied.  (SAC, Ex. 22-23).[5]  Hodes's letter explained that Metro-North had held a conference on January 11, 2013, at which the TWUA argued that Plaintiff's dismissal was "excessive" because Plaintiff had merely "made a mistake when he falsely reported he was injured while at work"; Hodes observed, however, that it was "undisputed" that Plaintiff had "filed a false injury claim," and that Metro-North had found "sufficient testimony and evidence to sustain the charges."  (SAC ¶ 61; *id.* at Ex. 22-23). On February 11, 2013, the TWUA appealed Metro-North's decision to the

---

[4]     Plaintiff does not bring this claim against Defendant Walker, despite his allegation that Walker was present for the offending conversation.

[5]     The Hodes Letter is a two-page letter — the first page is appended to the SAC as Exhibit 22 and the second page is appended as Exhibit 23.

Special Board of Adjustment. (SAC ¶ 62). On August 29, 2014, Defendant

Board Chair Nancy Eischen upheld Plaintiff's dismissal. (*Id.* at ¶ 63).

### 4. Discipline of Other Metro-North Employees

Plaintiff claims that Metro-North engaged in selective enforcement of its

policies as evidenced by its leniency toward two employees — Gibson Bratts

and Mario Suazo — who committed the same offense as Plaintiff. (SAC ¶ 72).

On October 16, 2008, Bratts was charged with conduct unbecoming of a

Metro-North employee for giving false statements regarding an injury; he was

suspended for 30 days. (SAC, Ex. 1). Bratt's suspension was later decreased

to 10 days based on the "facts and circumstances surrounding []his case." (*Id.*

at Ex. 2). Suazo had been disciplined numerous times during a thirteen-year

period for offenses including improper attire, "excessive absenteeism," and, like

Plaintiff, conduct unbecoming of a Metro-North employee due to "fraudulent

representations to Metro-North of [his] medical condition." (*Id.* at Ex. 8; *see

also id.* at Ex. 3-13). On the latter charge, Suazo was terminated, but his

termination was later reduced to a suspension "due to the particular facts and

circumstances surrounding" his case. (*Id.* at Ex. 8).

## B. Procedural History

### 1. The Relevant Pleadings

Plaintiff initiated this action on November 16, 2015. (Dkt. #2).[6] On

February 22, 2016, then-Chief Judge Loretta A. Preska granted Plaintiff's

---

[6]     Plaintiff's initial Complaint included claims against John R. Feltz. At the September 22,
2016 conference with the Court, Plaintiff orally moved to dismiss Defendant Feltz from
this matter (*see* Dkt. #34), and Feltz was not named in the SAC.

application to proceed *in forma pauperis*. (Dkt. #4). A week later, on February 29, 2016, Judge Preska ordered Plaintiff to amend his Complaint to avoid having his case dismissed for failure to state a claim. (Dkt. #5). Plaintiff filed his First Amended Complaint on May 6, 2016 (Dkt. #8), and this case was reassigned to the undersigned on July 1, 2016. On August 22, 2016, counsel for the Union Defendants notified the Court of their intention to move to dismiss Plaintiff's Amended Complaint. (Dkt. #21).

Following a conference with the Court on September 22, 2016, Plaintiff was granted leave to file the SAC, which he did on October 31, 2016. (Dkt. #34, 45). The Union Defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on November 7, 2016. (Dkt. #48). On December 5, 2016, the Metro-North Defendants moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction; under Rule 12(b)(2) for lack of personal jurisdiction over Defendant Plumb; under Rule 12(b)(5) for insufficient service of process on Plumb; and under Rule 12(b)(6) for failure to state a claim. (Dkt. #58). Plaintiff filed a joint opposition to both motions on February 1, 2017. (Dkt. #70). The Union Defendants and Metro-North Defendants filed replies in support of their motions on February 10 and February 14, 2017, respectively. (Dkt. #71-72).

Plaintiff filed an unauthorized sur-reply on February 21, 2017, and the Court granted the Union Defendants' motion to strike it. (Dkt. #73-75). Two days later, Plaintiff recast this submission as a belated opposition to the Union Defendants' motion, notwithstanding Plaintiff's earlier filing of a joint

opposition.  (Dkt. #77).  In light of Plaintiff's *pro se* status, the Court accepted

this filing and considered it in reviewing the motions to dismiss.  (Dkt. #78).

Also on February 23, 2017, Plaintiff filed an addendum to his joint opposition,

stating that he "inadvertently forgot to attach" additional "Marshal[] forms as

exhibits."  (Dkt. #76).

### 2.    Service of the Pleadings

It does not appear from the docket that Plaintiff undertook any efforts to

serve his original Complaint.  Plaintiff effected service of his Amended

Complaint on the TWUA, Lorraine, Metro-North, Hodes, and Walker.  (Dkt. #16,

19, 20, 25, 37, 43).  After an unsuccessful first attempt to serve Defendant

Plumb (Dkt. #15), Plaintiff requested an extension of time to effect service (Dkt.

#18).  The Court granted a brief extension and ordered counsel for Metro-North

to provide Plumb's last-known address.  (Dkt. #22, 27).  A new summons was

issued on August 29, 2016, and was returned executed on October 20, 2016.

(Dkt. #53).

A summons for Defendant Eischen was issued on July 6, 2016, and was

returned unexecuted on August 16, 2016.  (Dkt. #26).  On September 6, 2016,

Plaintiff requested an extension of time to serve Eischen (Dkt. #30), and the

Court granted a 45-day extension (Dkt. #31).  A second summons to Eischen

was issued on October 3, 2016, and was returned unexecuted on December 1,

2016.  (Dkt. #69).  Following this second attempt, Plaintiff asked the Court to

order counsel for Metro-North to provide Eischen's current address.  (Dkt. #62).

After receiving Metro-North's letter stating that it was not Eischen's employer

and did not have her address (Dkt. # 63), the Court denied Plaintiff's request (Dkt. #64). It does not appear that Eischen was ever served with the SAC; no one has filed a notice of appearance on her behalf, and she has not joined the instant motions to dismiss.

Defendant Chidester was named, for the first time, in Plaintiff's SAC. Plaintiff does not appear to have served or attempted to serve Chidester, and Chidester has not joined these motions to dismiss.

## DISCUSSION

Plaintiff's SAC raises a scattered set of grievances, and the Court has endeavored to construe them with the liberality the law requires. Putting aside certain of the terminology Plaintiff uses to describe his claims, the Court construes the facts alleged in the SAC to allege the following claims:

(i) Procedural due process violations warranting vacatur of the arbitral award under the Railway Labor Act, 45 U.S.C. § 153 First (q), against Metro-North and Walker;[7]

(ii) Conspiracy to interfere with Plaintiff's civil rights, in violation of 42 U.S.C. § 1985(3), against Hodes, Lorraine, and Plumb;

(iii) Breach of the duty of fair representation, against the TWUA and Lorraine;

---

[7] The Court notes that Plaintiff does not explicitly invoke § 153 First (q) in his SAC. The Court is mindful, however, that *pro se* complaints must be liberally construed to raise the strongest arguments they suggest. *Lopez* v. *Annucci*, 690 F. App'x. 56, 58 (2d Cir. 2017) (summary order) (citing *Abbas* v. *Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)). Plaintiff claims that certain procedural deficiencies in his disciplinary hearing caused his wrongful termination, and he seeks an award of four years' back-pay and reinstatement. (SAC ¶¶ 88, 90). In effect, he seeks to set aside the arbitral award entered by the Special Board of Adjustment. Accordingly, and for the reasons stated below, the Court analyzes Plaintiff's due process claim as a basis for setting aside the award under § 153 First (q) of the Railway Labor Act.

| | |
|---|---|
| (iv) | Selective enforcement, in violation of the Equal Protection Clause of the Fourteenth Amendment, against Metro-North; and |
| (v) | Cruel and unusual punishment, in violation of the Eighth Amendment, against Metro-North.[8] |

In the remainder of this Opinion, the Court will consider first the non-merits-based arguments brought by the Metro-North Defendants under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and by Defendant Plumb under Rules 12(b)(2) and 12(b)(5) of the same. Thereafter, it will consider the Union Defendants' and Metro-North Defendants' various claims for dismissal under Rule 12(b)(6).

## A. The Railway Labor Act Arguably Deprives the Court of Subject Matter Jurisdiction Over Plaintiff's Due Process Claim

### 1. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Courts may dismiss an otherwise sufficient complaint for a lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In evaluating a motion under Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp.* v. *Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). Even so, a court may not premise jurisdiction on favorable inferences drawn from the pleadings. *Id.* Instead, a plaintiff must show by a preponderance of the evidence that subject matter jurisdiction lies over the dispute. *Makarova*, 201

---

[8] The Court does not consider claims brought against Defendants Eischen or Chidester, as they have not been served and have not joined these motions.

F.3d at 113.  When deciding a motion under Rule 12(b)(1), a court may rely on evidence outside the complaint.  *Cortlandt St. Recovery Corp.* v. *Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015).

### 2.     The Railway Labor Act

The Railway Labor Act, 45 U.S.C. §§ 151-165, 181-188 (the "RLA"), was enacted to promote "the prompt and orderly settlement of labor disputes between railway carriers and their employees."  *United Transp. Union* v. *Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Defendant Metro-North is a "carrier" as defined under 45 U.S.C. § 151 First, and Plaintiff is an "employee" under § 151 Fifth.[9]

Disputes regarding employee discharge are considered "minor" disputes under the RLA.  *United Transp. Union*, 588 F.3d at 809-10.  The RLA provides that minor disputes will be resolved internally at the carrier and, if those efforts prove unsuccessful, through binding arbitration before a Special Board of Adjustment, which is created by agreement between the carrier and the union.  45 U.S.C. § 153 First (i) & Second; *see also Coppinger* v. *Metro-North Commuter R.R.*, 861 F.2d 33, 36 (2d Cir. 1988).

The CBA between Metro-North and the TWUA sets forth procedures for employee discipline and discharge, including procedures to appeal to an Impartial Arbitrator.  (SAC, Ex. 28-29).  The RLA provides for very limited judicial review of arbitral awards — a court may set aside an award only if it

---

[9]     The RLA was drafted in 1926 and its structure is an idiosyncratic vestige of an earlier era.  Instead of labeling subsections with numerals, Congress used the designations "First," "Second," and so forth.

finds the Board did not comply with the RLA, considered matters beyond its jurisdiction, or committed fraud or corruption. 45 U.S.C. § 153 First (q).

### 3.    Discussion

The Metro-North Defendants argue that Plaintiff attacks the procedures by which his disciplinary hearing was conducted, and that such attacks are not among the limited bases for setting aside an arbitral award under the RLA. (Metro-North Br. 7-8). Plaintiff responds that the RLA does not foreclose judicial review of constitutional claims. (Pl. Opp. 2). To a degree, Plaintiff is correct: The Second Circuit has held that the RLA does not foreclose judicial review of a rail carrier employee's constitutional attack on arbitration proceedings held pursuant to the Act. *Shafii* v. *PLC British Airways*, 22 F.3d 59, 64 (2d Cir. 1994) ("We affirm the rule in this Circuit that an order of the [National Railroad Adjustment Board] or its counterparts is reviewable upon a claim that a participant was denied due process by the Board.").

Significantly, however, the due process violations of which Plaintiff complains — that Defendant Walker held a hearing while Plaintiff was taking painkillers and refused to call a witness to submit to cross-examination — occurred in the underlying disciplinary hearing at Metro-North, and not in the arbitration before the Special Board of Adjustment. Even though this Circuit recognizes that due process violations may warrant vacatur of an arbitral award under § 153 First (q), it is not at all clear that judicial review extends to due process claims that attack the *pre*-arbitration internal procedures at the carrier that may be specified in a particular collective bargaining agreement.

14

*Compare Martino* v. *Metro-North Commuter R.R. Co.*, 582 F. App'x 27, 29 (2d Cir. 2014) (summary order) (exercising jurisdiction over a due process challenge to an arbitration), *with Dominguez* v. *Miller*, No. 12 Civ. 231 (CBA), 2013 WL 703193, at *8 (E.D.N.Y. Jan. 18, 2013) (declining jurisdiction over due process claims regarding pre-arbitration proceedings); *Christiani* v. *Metro-North Commuter R.R. Co.*, No. 92 Civ. 4494 (JFK), 1994 WL 74881, at *5 (S.D.N.Y. March 7, 1994) (same); *D'Elia* v. *N.Y., New Haven & Hartford R.R.*, 338 F.2d 701, 702 (2d Cir. 1964) (holding that carrier employee was entitled to an impartial proceeding before the Board, but not during an internal proceeding with the carrier).

The Court is disinclined to enter uncharted jurisdictional waters, particularly since, as discussed later in this Opinion, Plaintiff's due process claim fails on the merits. While the Court believes the Metro-North Defendants have the better of the arguments, it will deny their motion to dismiss Plaintiff's due process claim under Rule 12(b)(1), and resolve it under Rule 12(b)(6).[10]

---

[10] To the extent that the Metro North Defendants invite the Court to dismiss Plaintiff's other claims under Rule 12(b)(1), the Court declines. Plaintiff's conspiracy, duty of fair representation, and Eighth Amendment claims do not amount to an attack on the procedures afforded under the RLA, and the Court sees no basis for dismissing these claims as resolved by the Special Board of Adjustment.

Plaintiff's equal protection claim presents a closer call. His selective enforcement argument was submitted to Defendant Eischen in the arbitration before the Special Board of Adjustment, and she considered it in her arbitral award upholding Plaintiff's termination. (Meinen Decl., Ex. J). The Court finds that the Second Circuit's reasoning in *Shafii* permits the exercise of jurisdiction over this claim. Even though the *Shafii* Court did not make clear its intention to examine the process afforded a rail carrier employee in an internal disciplinary hearing, it did make plain this Circuit's view that the RLA was not meant to "foreclose judicial review of constitutional claims." *Shafii*, 22 F.3d at 64. Because Plaintiff's equal protection claim raises a constitutional attack to his termination, the Court finds that it can exercise jurisdiction over this claim.

**B.    The Court Lacks Personal Jurisdiction Over Defendant Plumb**

The Court next considers Defendant Plumb's motion to dismiss for a lack of personal jurisdiction under Rule 12(b)(2) and, as appropriate, for improper service of process under Rule 12(b)(5).

**1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  To survive a motion to dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." *Id.*  A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Plaintiff's jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings.  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

To determine whether the exercise of personal jurisdiction is proper, a court conducts a two-part inquiry:  *First*, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state.  *Licci ex rel.*

*Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). Here, the relevant inquiry centers on New York's long-arm statute, which provides, in relevant part, that "a court may exercise personal jurisdiction over any non-domiciliary … who … commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2); *see Manuel* v. *City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (noting that "[s]ection 1983 creates a species of tort liability") (citation omitted); *Scott* v. *Nat'l Ass'n for Stock Car Racing, Inc.*, No. 06 Civ. 6029 (DAB), 2008 WL 217049, at *6 (S.D.N.Y. Jan. 17, 2008) (finding that claims under § 1985 are torts for personal jurisdiction analysis). Notably, a plaintiff "need not actually prove that defendant committed a tort"; it is enough that he state a "colorable cause of action." *Gucci Am., Inc.* v. *Frontline Processing Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010) (internal quotation marks omitted).

*Second*, a court must examine whether the exercise of personal jurisdiction comports with due process. *Licci*, 732 F.3d at 168. "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 169 (internal quotation marks omitted). Put differently, due process is not violated when a defendant is "haled into court in a forum State based on his own affiliation with the state[.]" *Walden* v. *Fiore*, 134 S. Ct. 1115, 1123 (2014). In deciding whether the exercise of jurisdiction is reasonable, a court considers "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest

in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies." *Robertson-Ceco*, 84 F.3d at 568 (quoting *Asahi Metal Indus. Co., Ltd.* v. *Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113-14 (1987)). While due process is distinct from a statutory basis for personal jurisdiction, the Second Circuit has noted that it would be the "rare" case where personal jurisdiction was proper under New York's long-arm statute but not under a due process analysis. *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks omitted).

### 2. Discussion

As just noted, New York's long-arm statute permits the exercise of personal jurisdiction over a defendant who commits a tort in the state. N.Y. C.P.L.R. § 302(a)(2). Defendant Plumb concedes as much, but argues that "Plaintiff … fails to allege that David Plumb engaged in such a tortious act for purposes of satisfying the long-arm statute." (Metro-North Br. 17). It matters not at this stage whether Plumb, in fact, engaged in a conspiracy to commit a tort; what matters is whether Plaintiff has met the minimal burden of establishing a *prima facie* case of conspiracy sufficient to confer jurisdiction under the long-arm statute. *See LaChapelle* v. *Torres*, 1 F. Supp. 3d 163, 169-70 (S.D.N.Y. 2014) ("To prove personal jurisdiction under a theory of conspiracy, a plaintiff must make a *prima facie* showing of a conspiracy and allege specific facts warranting the inference that the defendants were members

of the conspiracy." (internal quotation marks omitted)).  To make such a showing, Plaintiff must allege a primary tort — here, a deprivation of his civil rights under 42 U.S.C. § 1983 — as well as (i) a corrupt agreement; (ii) an overt act in furtherance of the agreement; (iii) intentional participation in the plan or purpose; and (iv) resulting injury.  *Id.* at 170.

This Plaintiff cannot do.  The Court views the allegations in the light most favorable to the Plaintiff.  *Elsevier*, 77 F. Supp. 3d at 341.  Plaintiff alleges that Defendant Plumb participated in a conspiracy to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3).  (SAC ¶ 77).  Plaintiff alleges that an overt act in furtherance of this conspiracy took place during his disciplinary hearing, which was held in New York.  (*Id.* at ¶ 57).  While he alleges that the co-conspirators had a discussion outside his presence at his disciplinary hearing, he pleads no facts showing a corrupt agreement or Defendant Plumb's intentional participation in a conspiratorial plan.

The Court is mindful of the special solicitude owed a *pro se* party, *e.g.*, *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006), and observes that Plaintiff is not in a position, prior to discovery, to know more about this conversation.  But Plaintiff has not even raised an inference that discovery would yield evidence of a conspiracy; his bald allegation that a conspiracy existed — without more — is not enough.  *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan* v. *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("Rule 8 … does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009))).

Even on a liberal reading of the pleadings, the Court strains to find a *prima facie* claim of conspiracy sufficient to confer personal jurisdiction over Defendant Plumb under New York's long-arm statute. In the absence of a statutory basis for personal jurisdiction, the Court will not opine on whether personal jurisdiction in this case comports with due process. Defendant Plumb's motion to dismiss the claim against him under Rule 12(b)(2) is granted. Further, because the Court concludes that it lacks personal jurisdiction over Defendant Plumb, it declines to consider Plumb's motion for improper service of process under Rule 12(b)(5).

## C. The Second Amended Complaint Fails to State a Plausible Claim for Relief

Plaintiff's pleading deficiencies extend to the merits of his claims. As detailed in the remainder of this section, each of Plaintiff's claims fails to state a claim and must be dismissed.

### 1. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)), such that a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Tongue* v. *Sanofi*, 816 F.3d 199,

209 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Importantly, courts must "draw all reasonable inferences in Plaintiff's favor" and "assume all 'well-pleaded factual allegations' to be true." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). A *pro se* complaint must be "liberally construed … however inartfully pleaded." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007). And a *pro se* litigant's arguments opposing the motion to dismiss must be interpreted to "raise the strongest arguments they suggest." *Wright* v. *Comm'r of Internal Review*, 381 F.3d 41, 44 (2d Cir. 2004). Finally, where defendants raise an affirmative defense that claims are time-barred, "[s]uch a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey* v. *St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also Gonzalez* v. *Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield 7421*, No. 15 Civ. 810 (GHW), 2016 WL 354913, at *3 (S.D.N.Y. Jan. 28, 2016) (finding that compliance with the statute of limitations for claims brought under § 1983 is not a jurisdictional bar); *Arnold* v. *1199 SEIU*, 09 Civ. 5576 (DLC), 2009 WL 4823906, at *5 (S.D.N.Y. Dec. 15, 2009) (same, as to claims for a breach of the duty of fair representation).

### 2. Certain of Plaintiff's Claims Are Untimely

The Court examines the timeliness of Plaintiff's claims for: (i) violations of his right to procedural due process; (ii) violation of his equal protection rights under a theory of selective enforcement; (iii) conspiracy to violate his civil rights; and (iv) breach of the duty of fair representation as a basis for dismissal under Rule 12(b)(6).[11]

### a. Plaintiff's Claims for Due Process, Equal Protection Violations, and Conspiracy Under 42 U.S.C. § 1985(3)

Plaintiff's claims of due process and equal protection violations both arise under 42 U.S.C. § 1983 and are subject to a three-year statute of limitations. *Owens* v. *Okure*, 488 U.S. 235, 251 (1989); *see also Friedl* v. *City of N.Y.*, 210 F.3d 79, 84 (2d Cir. 2000) (finding a procedural due process claim under § 1983); *LaTrieste Rest. & Cabaret Inc.* v. *Vill. of Port Chester*, 40 F.3d 587, 588 (2d Cir. 1994) (finding a selective enforcement claim under § 1983). While New York law provides the three-year statute of limitations, federal law governs when the claim accrues. *Eagleston* v. *Guido*, 41 F.3d 865, 871 (2d Cir. 1994). A claim under § 1983 accrues "when the plaintiff knows or has reason to know of the harm." *Id.* (internal quotation marks omitted).

Plaintiff claims that he was deprived of adequate due process during his disciplinary hearing at Metro-North on November 30, 2012. He was terminated on December 5, 2012. Though Plaintiff certainly knew of the offending conduct

---

[11] Plaintiff also brings a claim for cruel and unusual punishment under the Eighth Amendment, but given the obvious defects in the merits of this claim, the Court does not opine on its timeliness here.

during his hearing on November 30, his claim for a violation of due process did not accrue until he "knew or had reason to know that []he actually would suffer deprivation of [his] protected property interest. *Palkovic* v. *Johnson*, 150 F. App'x 35, 37 (2d Cir. 2005) (summary order) (citing *Veal* v. *Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (rejecting argument that due process claim accrued during hearing, and finding it did not accrue until the plaintiff received an adverse decision). Accordingly, Plaintiff's due process claim accrued at the time he was terminated on December 5, 2012.

Plaintiff's claim of selective enforcement in violation of the Equal Protection Clause similarly flows from his December 5, 2012 termination. Plaintiff appealed his termination within Metro-North, and then in arbitration, and the arbitrator's award confirming his dismissal was issued on August 29, 2014. (*Id.* at Ex. 25). Plaintiff asks the Court to find that his equal protection claim did not accrue until this later date in 2014. (Pl. Opp. 4). However, a claim for wrongful discharge accrues from the time the employee had notice of his or her termination, and that the limitations period is not tolled by a pending grievance proceeding. *Wormer* v. *City of Rensselaer*, 293 F. App'x 783, 784 (2d Cir. 2008) (summary order) (finding plaintiff's claim time-barred because he did not allege an unconstitutional act after the date he learned of his termination); *Washington* v. *Cty. of Rockland*, 373 F.3d 310, 317-20 (2d Cir. 2004) (rejecting argument that limitations period was tolled pending outcome of administrative proceeding); *see generally Delaware State College* v. *Ricks,* 449 U.S. 250, 261 (1980) (holding that the "pendency of a grievance, or some other

method of collateral review of an employment decision, does not toll the running of the limitations period"). Plaintiff's equal protection claim thus accrued on December 5, 2012.

Plaintiff's conspiracy claim under 42 U.S.C. § 1985(3) is likewise subject to a three-year statute of limitations. *Paige* v. *Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001). The statute of limitations for a claim under § 1985(3) begins to run "once the plaintiff knows of the injury on which the claim is based." *Jaghory* v. *N.Y. State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997). Plaintiff alleges that Defendants Hodes, Lorraine, Plumb, and Eischen engaged in an act in furtherance of their conspiracy at his disciplinary hearing on November 30, 2012; Plaintiff alleges no other facts supporting his claim under § 1985(3). Plaintiff claims his termination effected a civil rights violation; thus, Plaintiff knew of the injury on which his claim is based on the date he was terminated, December 5, 2012. (*See* SAC, Ex. 15).

Simple arithmetic confirms that the statute of limitations expired on Plaintiff's due process, equal protection, and conspiracy claims on December 5, 2015. Plaintiff filed his Complaint and a request to proceed *in forma pauperis* on November 16, 2015, fewer than three weeks before the limitations period expired. (Dkt. #1-2). But Plaintiff filed the SAC, the operative pleading in this case, on October 31, 2016. (Dkt. #45). The Metro-North Defendants argue that Plaintiff's SAC cannot relate back to the initial Complaint under Rule 15(c)(1)(C) — and thus that his claims are untimely — because Plaintiff never served that Complaint on any Defendant, and because the Metro-North

Defendants were consequently not on notice of his claim within the limitations period. (Metro-North Br. 10). And, in point of fact, the docket does not reflect any effort to serve the Complaint. That said, it is not clear from the record whether good cause exists to justify Plaintiff's failure to serve the Complaint within the time required under Rule 4(m).

The Court is troubled that Plaintiff's Complaint appears to have remained in the *pro se* screening process pursuant to 28 U.S.C. § 1915 for longer than is customary — Plaintiff did not receive an Order to Amend until February 29, 2016 (Dkt. #5), over three months after he filed his claim and after the time to serve the Complaint under Rule 4(m) had elapsed. For reasons similarly lost to history, Plaintiff's application to proceed *in forma pauperis* was also pending for an unusually long time and was not granted until February 22, 2016. (Dkt. #4). Plaintiff may have been under the mistaken belief that he could rely on the United States Marshals Service to effect service for him, but this right did not attach until his application to proceed *in forma pauperis* was granted. 28 U.S.C. § 1915(d); *Romandette* v. *Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). And even if Plaintiff's application had been granted, Plaintiff would have been obligated to confirm that the Marshals Service effected service and to seek an extension of time if it appeared the Marshals would not timely do so. *Meilleur* v. *Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that plaintiff proceeding *in forma pauperis* was obligated to monitor the Marshals' efforts to effect service and to request an

extension if the Marshals could not timely effect service).  It is not apparent from the docket that Plaintiff ever made any such request to the Marshals.

Before the Court granted Plaintiff's request to proceed *in forma pauperis*, it was Plaintiff's responsibility to serve the Complaint or seek an extension of the time to effect service.  While Plaintiff may have lacked the financial resources to hire a professional process server, he was not incarcerated or similarly incapable of finding someone to serve the Complaint.  He was also able to request the Marshals' assistance prior to being granted *in forma pauperis* status.  *See* Fed. R. Civ. P. 4(c)(3) ("*At the plaintiff's request*, the court may order that service be made by a United States marshal[.]" (emphasis added)).  The Court has labored to find good cause for Plaintiff's failure to serve the Complaint, but in light of the record and this Circuit's precedent in *Meilleur*, the Court cannot make such a finding.

On these facts, it appears that Plaintiff's claims for violations of his right to procedural due process, selective enforcement in violation of the Equal Protection Clause, and conspiracy under § 1985(3) are time-barred.  However, these claims also fail as a matter of law; accordingly, the Court need not make a conclusive finding about the timeliness of Plaintiff's claims, but will instead resolve them on the merits later in this Opinion.

> **b.    Plaintiff's Claim for Breach of the Duty of Fair Representation**

The timeliness of Plaintiff's claim for breach of the duty of fair representation presents a much clearer question.  As the Union Defendants correctly note, this claim is subject to a six-month statute of limitations.

(Union Br. 13 (collecting cases)).  *See also Kalyanaram* v. *Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (finding that a six-month statute of limitations applies to an employee's claim against a union for breach of duty of fair representation).  A claim for breach of the duty of fair representation accrues when the employee "knew or reasonably should have known that such a breach … had occurred, even if some possibility of nonjudicial enforcement remained." *Id.*  The Second Circuit in *Kalyanaram* found that when an employee bases his or her claim on the union's conduct during an arbitration, the employee is not charged with knowledge of the breach and the claim does not accrue until "the date of the award." *Id.* (quoting *Santos* v. *Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 969 (2d Cir. 1980)).

However, it is worth noting that the plaintiff in *Kalyanaram* did not have an internal hearing before proceeding to arbitration.  *Kalyanaram*, 742 F.3d at 44-45.  The analogous proceeding in this case is, arguably, Plaintiff's disciplinary hearing at Metro-North.  By this reasoning, Plaintiff's claim accrued at the time he received his termination notice on December 5, 2012, and the statute of limitations expired on June 5, 2013.  But even if Plaintiff's claim did not accrue until he received the arbitral award on August 29, 2014, his claim was time-barred long before the time he filed the initial Complaint in this matter on November 16, 2015.  Moreover, Plaintiff's claim that Defendant Lorraine breached the duty of fair representation by "encouraging, suggesting, and persuading Plaintiff to retract an otherwise true statement regarding an on

the job injury" (SAC ¶ 79), is plainly time-barred. This claim is based on events that occurred on December 28, 2010, and it became time-barred more than four years before Plaintiff filed his Complaint. Accordingly, the Court finds that Plaintiff's claim against the Union Defendants for breach of the duty of fair representation is time-barred.

### 2. The Second Amended Complaint Fails on the Merits

#### a. Plaintiff's Due Process Claim

Plaintiff's due process claim, which the Metro-North Defendants seek to dismiss on jurisdictional grounds, fails on its merits. Even assuming that Plaintiff derived a property interest from the CBA's prohibition on termination without a hearing, *see Moffitt* v. *Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (holding that a collective bargaining agreement gave rise to a property interest in continued employment), the logical follow-up question would be, "[W]hat process is due[?]", *Ciambrello* v. *Cty. of Nassau*, 292 F.3d 307, 319 (2d Cir. 2002) (internal quotation marks omitted). The Metro-North Defendants argue, and the law in this Circuit is clear, that the pre- and post-deprivation procedures set forth in a collective bargaining agreement are, typically, sufficient to provide due process. (Metro-North Reply 5 (citing *Harhay* v. *Town of Ellington Bd. of Educ.*, 323 F.3d 206, 213 (2d Cir. 2003))). *See also Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 544-45 (1985) (holding that a pre-termination hearing "need not be elaborate"); *Adams* v. *Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) ("We have held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the

deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement.").

Under the CBA between Metro-North and the TWUA, no employee may be suspended or dismissed without "a fair and impartial trial" at which he or she is entitled to call witnesses. (SAC, Ex. 28). And, in fact, Plaintiff received pre-deprivation notice and a hearing. (SAC ¶ 39). The hearing was postponed a dozen times over nearly two years to accommodate Plaintiff's medical issues. (*Id.* at ¶¶ 42-43, 46). Both Defendant Lorraine and Plaintiff himself informed Defendant Walker that Plaintiff had been injured and was taking medication. (Hearing Tr. 3:11-16, 7:15-16). Plaintiff had the ability to "produce or have produced any pertinent evidence" and the right to call witnesses — such as Cornell Williams — to testify; he simply chose not to. (*Id.* at 19:12-19). The Court cannot find, on these facts, that the SAC states a due process claim upon which relief could be granted. [12]

### b. Plaintiff's Conspiracy Claim

As discussed above, Plaintiff's conspiracy claim appears to be time-barred. The Court considers the merits nonetheless, and finds that Plaintiff

---

[12] In his opposition brief, Plaintiff presents evidence that Defendant Walker presided over a disciplinary hearing held on January 2, 2008, on charges that Plaintiff had failed to clean train car windows. (Pl. Opp. 6). He alleges that Walker disregarded the testimony of a Metro-North employee who observed Plaintiff cleaning the windows in question and found him "guilty." (*Id.*). To the extent that Plaintiff means to imply that Walker harbored a bias against him, this evidence does not change the Court's conclusion. Plaintiff has not put forth sufficient evidence to support a claim that Walker's prior rulings amounted to an impermissible bias sufficient to deprive him of due process. *See Withrow* v. *Larkin*, 421 U.S. 35, 48-49 (1975) (recognizing that decisionmakers are repeat players and that a hearing examiner's repeat involvement with a case or parties is not, on its own, unconstitutional).

also fails to state a claim on which relief can be granted.  Plaintiff alleges that Defendants Hodes, Lorraine, Plumb, and Eischen engaged in a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985(3).[13]  In particular, he claims that these Defendants, plus Defendant Walker, left the room at the end of his disciplinary hearing and had a conversation in the hallway during which "[i]t was apparent that the Defendants had a [d]iscussion concerning [] Plaintiff, without [] Plaintiff being present."  (SAC ¶ 76; *see also id.* at ¶ 57).[14]  To state a claim under § 1985(3), however, Plaintiff must show "[i] a conspiracy; [ii] for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; [iii] an act in furtherance of the conspiracy; [iv] whereby a person is deprived of any right of a citizen of the United States."  *Brown* v. *City of Oneonta, N.Y.*, 221 F.3d 329, 341 (2d Cir. 2000) (internal quotation marks omitted).  Put somewhat differently, Plaintiff must plead "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to

---

[13]  Even though Plaintiff failed to plead this claim against Defendant Walker, the Court finds that this claim would be dismissed against Walker had it been properly raised against him.

Plaintiff also alleges that this conspiracy violated 18 U.S.C. §§ 241-242.  These are criminal statutes that do not provide any private right of action, and thus Plaintiff is not entitled to relief on these claims.  *See Storm-Eggink* v. *Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (citing *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *see also Conn. Action Now, Inc.* v. *Roberts Plating Co., Inc.*, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism … that in our federal system crimes are always prosecuted by the Federal Government[.]").

[14]  Plaintiff attempts to cast this claim as a violation of a defendant's right to be present for all stages of trial under the Confrontation Clause of the Sixth Amendment.  (Pl. Union Opp. 2).  Unfortunately (or fortunately, as the case may be) for Plaintiff, this right only attaches to criminal defendants, and does not apply to his disciplinary hearing with Metro-North.  *See Illinois* v. *Allen*, 397 U.S. 337, 338 (1970).  In short, Plaintiff is not entitled to any relief under the Confrontation Clause.

achieve the unlawful end." *Webb* v. *Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted). Finally, Plaintiff must show that the conspiracy was motivated by "invidious discriminatory animus." *Dolan* v. *Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted).

Plaintiff has failed to meet even the minimal burden imposed at the motion to dismiss stage. Plaintiff's conspiracy allegation is premised on two facts: (i) Defendants Hodes, Lorraine, Plumb, Walker, and Eischen had a conversation about Plaintiff in the hallway at the end of his disciplinary hearing; (ii) Plaintiff was terminated after the hearing. Even taking as true that the conversation occurred, that it was about Plaintiff, and that he was subsequently terminated, the Court cannot find that Plaintiff has "nudged [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Union Defendants argue that "Lorraine could just as well have been trying to persuade them *not* to fire [Plaintiff]," as union representatives will often try to settle cases in "off-the-record[] hallway conversations." (Union Br. 10 (emphasis in original)). That rumination is no more or less likely than the one alleged by Plaintiff, and that equipoise is fatal to Plaintiff's claim: There is nothing on the face of the SAC to support a finding that there was any meeting of the minds or that Plaintiff was deprived of any civil right due to any agreement among Defendants Hodes, Lorraine, Plumb, Walker, and Eischen.

The Union Defendants' and Metro-North Defendants' motions to dismiss Plaintiff's § 1985(3) claim is granted.[15]

### c. Plaintiff's Claim for Breach of the Duty of Fair Representation

Plaintiff's time-barred claim for breach of the duty of fair representation also fails on the merits. To prevail on a claim of breach of the duty of fair representation, Plaintiff must show "[i] conduct by the union toward a member that is arbitrary, discriminatory, or in bad faith … and [ii] a causal connection between the union's wrongful conduct and [plaintiff's] injuries. *Martino*, 582 F. App'x at 28 (citations omitted). There are no facts in the SAC to support a finding that the Union Defendants' conduct in handling Plaintiff's grievance process was "arbitrary, discriminatory, or in bad faith" or that there is a causal connection between any action of the Union Defendants and Plaintiff's termination from Metro-North. Defendant Lorraine represented Plaintiff at his hearing, made a vigorous appeal to Defendant Walker to permit cross-examination of Williams, conducted cross-examination of Defendant Plumb, and made a closing statement on Plaintiff's behalf. (*See generally* Hearing Tr.). At most, Plaintiff alleges a tactical error or negligence, "neither of which

---

[15]  The Union Defendants also argue that Plaintiff's constitutional claims fail as to them because unions and their representatives are not state actors. (Union Br. 8-11). While labor unions are not generally considered arms of the state, *see Ciambrello* v. *Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002), courts have found that § 1985(3), as drafted, reaches private conspiracies, *see United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO* v. *Scott*, 463 U.S. 825, 832 (1983). Nevertheless, this Circuit has found that state action is required where a plaintiff alleges a conspiracy to deprive him or her of equal protection in violation of the Fourteenth Amendment. *Edmond* v. *Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (summary order) (citing *United Bhd. of Carpenters*, 463 U.S. at 831-32)). The Court finds, therefore, that Plaintiff's conspiracy claim fails against the Union Defendants on state action grounds.

amounts to a breach of the duty of fair representation." *Martino*, 582 F. App'x

at 29 (citing *Vaughn* v. *Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.

2010)).[16]

Even if Plaintiff's allegation that Defendant Lorraine's instruction to lie

about his injury rises to the level of "bad faith," Plaintiff cannot show a causal

connection to his termination. Taking as true Plaintiff's allegation that he was

injured at work but recanted his injury report at Lorraine's instruction, Plaintiff

certainly knew by the time of his disciplinary hearing that this recantation was

problematic, and he had ample opportunity — including when he testified at

the hearing — to explain why he had falsified the injury report. On these facts,

the Court cannot find that Lorraine's advice, however misguided, caused

Plaintiff's termination. Finally, Plaintiff's claim against Defendant Lorraine fails

for the additional reason that there is no liability for individual union members

for breach of the duty of fair representation. *Morris* v. *Local 819, Int'l Bhd. of*

*Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) ("We now join the other circuits

that have considered the issue and hold that [the Labor Management Relations

Act,] 29 U.S.C. § 185(b)[,] and the caselaw provide a shield of immunity for

individual union members in suits for breach of the duty of fair

---

[16]    In his Opposition, Plaintiff attempts, belatedly and unsuccessfully, to re-frame this
claim as one for ineffective assistance of counsel under the Sixth Amendment and 28
U.S.C. § 2255. It is not clear from the pleadings that Defendant Lorraine is an attorney.
Even so, and as noted in note 14, Plaintiff was not, and is not, a defendant in a criminal
proceeding, is not entitled to a writ of habeas corpus, and may not raise a claim for
ineffective assistance of counsel. *See* 28 U.S.C § 2255 (making relief available to "a
prisoner in custody"); *Singh* v. *Home Depot U.S.A., Inc.*, 580 F. App'x 24, 25 (2d Cir.
2014) (summary order) (finding "lawyer's purported shortcomings present no cognizable
ground for relief in a civil matter, where the Sixth Amendment right to counsel does not
apply" (quoting *United States* v. *Coven*, 662 F.2d 162, 176 (2d Cir. 1981))).

representation.").  The Union Defendants' motion to dismiss this claim is granted.

### d.    Plaintiff's Equal Protection Claim

Plaintiff's untimely equal protection claim must also be dismissed.  The Equal Protection Clause of the Fourteenth Amendment is a mandate that all similarly-situated individuals be treated alike.  *City of Cleburne* v. *Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."  *Artec Constr. & Dev. Corp.* v. *N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 15 Civ. 9494 (KPF), 2017 WL 782911, at *2 (S.D.N.Y. Feb. 27, 2017) (quoting *Harlen Assocs.* v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).  An individual may assert either a "class of one" or "selective enforcement" equal protection claim.  *Id.*

Plaintiff rests his claim on a theory of selective enforcement.  (SAC ¶¶ 71-72, 85).  To prevail, he must show that "(i) the plaintiff, compared with others similarly situated, was selectively treated; and (ii) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Diesel* v. *Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).

Even upon a liberal reading of the SAC, the Court finds that Plaintiff cannot make this showing. Plaintiff points to two Metro-North employees who, he alleges, committed the same infraction and received a lesser punishment: Gibson Bratts and Mario Suazo. (SAC ¶ 72). While Plaintiff is not required to show that these men are identically situated to Plaintiff, he is required to show they are similar "to the extent that an objectively identifiable basis for comparability exists." *Savino* v. *Town of Southeast*, 983 F. Supp. 2d 293, 305 (S.D.N.Y. 2013) (internal quotation marks omitted). Like Plaintiff, Bratts and Suazo are both Coach Cleaners at Metro-North. (SAC, Ex. 1, 10). In 2008, Bratts was given a 30-day suspension for conduct unbecoming of a Metro-North employee based on his "false statements regarding [his] alleged personal injury that [he] reported on February 25, 2008." (*Id.* at Ex. 2). That suspension was subsequently reduced to 10 days. (*Id.*). Suazo was terminated in 2003 for conduct unbecoming of a Metro-North employee, namely, "fraudulent representations to Metro-North of [his] medical condition." (*Id.* at Ex. 8). His termination was later reduced to a suspension. (*Id.*).

Bratts's and Suazo's disciplinary notices each cite one infraction: conduct unbecoming of a Metro-North employee. (SAC, Ex. 2, 8). Plaintiff's cites three: (i) absence from assigned work location without permission on December 23, 2010; (ii) falsification of an injury report, also on December 23, 2010; and (iii) conduct unbecoming of a Metro-North employee, for admitting on December 28, 2010, to having made a false statement about his injury. (*Id.* at Ex. 15). Because Plaintiff was disciplined on two additional infractions, it is

not clear that Bratts and Suazo are appropriate comparators.  But even assuming that they are, and that Plaintiff was selectively treated, the SAC does not allege any facts whatsoever that he was treated differently because of impermissible considerations or bad faith.  Plaintiff does not allege that he is a member of a protected class or that anyone at Metro-North acted on ill-will or bad faith rather than "legitimate governmental objectives."  *Bizzarro* v. *Miranda*, 394 F.3d 82, 87 (2d Cir. 2005).  On these facts, Plaintiff's claim for selective discrimination in violation of the Fourteenth Amendment cannot stand.  *Id.* ("If the motivation to punish is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate state objective." (citation omitted)).[17]  The Metro-North Defendants' motion to dismiss Plaintiff's equal protection claim on the merits is granted.

### e.    Plaintiff's Claim for Cruel and Unusual Punishment

Plaintiff believes that his termination from Metro-North amounts to "cruel and unusual punishment in violation of the [E]ighth Amendment" insofar as it is "clearly out of proportion to the offense committed."  (SAC ¶ 86).  No matter how sincere his belief in the disproportionality of his termination to the conduct he allegedly committed, Plaintiff is not entitled to relief under the Eighth Amendment, which is available only to individuals convicted of criminal

---

[17]    Because the Court finds that Plaintiff has not adequately pleading an underlying constitutional violation that can be vindicated under § 1983, the Court does not reach the issue of municipal liability for this claim under *Monell* v. *Department of Social Services*, 436 U.S. 658, 694 (1978).  *See Tyk* v. *Police Officer Eric Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (summary order) (citing *Segal* v. *City of N.Y.*, 459 F.3d 2017, 219 (2d Cir. 2006)).

conduct.  *Ingraham* v. *Wright*, 430 U.S. 651, 671 n.40 (1977).  The Union

Defendants' and Metro-North Defendants' motions to dismiss Plaintiff's Eighth

Amendment claim is granted.

### f.    Plaintiff's Additional Claims for Relief

Plaintiff's SAC adverts to various statutes that, it would appear, are

misplaced in this litigation.  Plaintiff cites 28 U.S.C. §§ 1341 and 1342, which

address the levy of taxes by a state and "rate orders of state agencies,"

respectively.  (SAC ¶ 78).  These statutes have no relation to Plaintiff's claims.

Plaintiff also references 28 U.S.C. §§ 2201 and 2202, which govern declaratory

judgments, but it is not evident from the SAC that Plaintiff seeks such a

remedy.  (*See id.* at ¶¶ 10, 87-92).  Plaintiff's references to 42 U.S.C. §§ 1981

and 1986 (*id.* at ¶10), strike closer to the core of Plaintiff's case but are,

nevertheless, untethered to the facts alleged in the SAC.  Plaintiff does not

allege any facts concerning his ability to make or enforce contracts, nor does he

claim that anyone was in a position to prevent the Union Defendants' and

Metro-North Defendants' allegedly unconstitutional actions but sat idly by.  *See*

42 U.S.C. §§ 1981, 1986.  To the extent that Plaintiff seeks any relief from his

fleeting references to these statues, the Court cannot find any basis upon

which these claims survive the instant motions to dismiss.

Finally, Plaintiff's opposition brief asks the Court to retain supplemental

jurisdiction over his state-law claims (Pl. Opp. 9), but Plaintiff's SAC does not

plead any claims under state law and so the Court is unable to exercise

supplemental jurisdiction.  Plaintiff's First Amended Complaint appeared to

raise a claim under the "New York Administrative Act" and the New York State Constitution. (First Amended Complaint ¶ 40). Those claims are not pleaded in Plaintiff's SAC — the operative pleading in this case — and cannot form the basis of any relief.

### g. Plaintiff Is Not Granted Leave to Amend

A party may amend its pleading "only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Courts are to grant leave to amend "when justice so requires." *Id.; see also e.g.*, *McCarthy* v. *Dunn & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Nevertheless, "leave to amend may be denied if the amendment would be futile." *Price* v. *City of N.Y.*, 15 Civ. 5871 (KPF), 2017 WL 1437202, at*3 (S.D.N.Y. April 21, 2017) (citing *Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 389 (2d Cir. 2015)). Plaintiff has twice amended his Complaint. The Court cannot conceive of any further amendment that would permit Plaintiff's claims to survive a motion to dismiss under Rule 12(b)(6). Accordingly, it declines to grant leave to amend a third time. *Kassner* v. *2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that amended complaint must be "sufficient to withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)).

### CONCLUSION

For the foregoing reasons, the Union Defendants' motion to dismiss the SAC under Rule 12(b)(6) is GRANTED. The Metro-North Defendants' motion to dismiss under Rule 12(b)(1) is DENIED, but their motion to dismiss under Rule 12(b)(6) is GRANTED. Defendant Plumb's motion to dismiss under Rule

12(b)(2) is GRANTED.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      September 26, 2017
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Anthony Leon Clemmons
54 Vreeland Avenue, 1st Floor
Clifton, NJ 07011